IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| J. J. MEEKS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 2:05cv223-VPM |
| | )   [WO] |
| XTREME CYCLE SUPPLY, et al. | ) |
| | ) |
|     Defendant. | ) |

**MEMORANDUM OPINION AND ORDER ON MOTION**

Pending before the court is the defendant's ["Xtreme"][1] motion for summary judgment (Doc. # 20) of the plaintiff's ["Meeks"] claims alleging that Xtreme violated the Alabama Deceptive Trade Practices Act ["ADTPA" or "the Act"], Ala. Code §§ 8-19-1 *et seq.* (2002). Both parties have submitted legal memoranda and evidence in support of their positions, and, having considered the submissions, the court concludes that the motion is due to be granted.[2]

**I.   SUMMARY JUDGMENT STANDARD**

Summary judgment can be entered on a claim only if it is shown "that there is no

---

[1]For ease of reference, the court refers only to Xtreme, but the holding and rationale in this case apply equally to the other defendant, Troy Kyajohnian, Xtreme's "manager and registered agent" (Kyajohnian Aff., Doc. # 20-7).

[2]Meeks responded to the motion with a legal memorandum and evidence (Doc. # 21). Xtreme, in turn, replied with an additional brief (Doc. # 22) pursuant to the court's briefing schedule (Doc. # 13). Without seeking leave of court, Meeks then filed a response to Xtreme's reply (Doc. #24). The briefing schedule does not provide for the submission of a response to the movant's reply brief, and, because Meeks has neither sought the court's permission nor otherwise explained his need to submit such a response, the court declines to consider it.

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." ***Green v. Pittsburgh Plate & Glass Co.***, 224 F. Supp. 2d 1348, 1352 (N.D. Ala. 2002) (citing ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986)). "A judge's guide is the same standard necessary to direct a verdict: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id*. at 259. "Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore, the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party.[3] ***Adickes v. S.H. Kress & Co.***, 398 U.S. 144, 158 (1970); ***Mize v. Jefferson City Bd. of Educ.***, 93 F.3d

---

[3] The Supreme Court explained that:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

***Celotex Corp. v. Catrett***, 477 U.S. 317, 322-23 (1986) (citations omitted).

739, 742 (11th Cir. 1996). Notwithstanding this advantage, a nonmoving plaintiff bears the burden of coming forth with sufficient evidence on each element that must be proved. ***Earley v. Champion Int'l. Corp.***, 907 F.2d 1077, 1080 (11th Cir. 1990); *see* ***Celotex Corp.***, 477 U.S. at 322-23.  When faced with a properly supported motion for summary judgment, a plaintiff must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" ***Celotex Corp.***, 477 U.S. at 324.  Although the evidence need not be in a form necessary for admission at trial, *id.*, unsupported, self-serving allegations are insufficient to oppose a motion for summary judgment. ***Harris v. Ostrout***, 65 F.3d 912 (11th Cir. 1995); ***Fullman v. Graddick***, 739 F.2d 553, 556-57 (11th Cir. 1984).

## II.   FACTS

Viewed in the light most favorable to Meeks, the facts of this case are fairly easily summarized.  Meeks ordered and paid for a motorcycle kit from Xtreme with the understanding that the kit, which Meeks planned to have assembled elsewhere, would be delivered within two weeks from the time of payment (Doc. # 21-1, pp. 2-9).  Despite guaranteeing delivery within the time requested (Def's Ex. A, Meeks Dep. 74-77, Doc. # 20-2, pp. 19-20), Xtreme, which denies representing a particular delivery date and apparently defines "two weeks" as "14 working days" (Doc. # 21-8, p. 1), was unable to deliver on time (Doc. # 21-1, pp. 2-9).  Meeks, an entrepreneurial bail bondsman with a license to purchase and sell vehicles wholesale, then requested a full refund of the purchase price of $25,045.29,

which Xtreme denied. *Id.*

Not only was the kit delivered late, but it also was delivered somewhat piecemeal with parts arriving on different dates (Doc. # 21-9). Furthermore, some of the parts varied materially from Meeks' initial order (Def's Ex. A, Meeks Dep. 87-117, Doc. # 20-2, pp. 22-30).

Sometime during the course of events, Meeks sought legal counsel, and, prior to filing this lawsuit, the parties came to an agreement designed to avoid litigation (Docs. # 21-25, 21-26). Again, however, Xtreme defaulted, and the agreement failed (Def's Ex. A, Meeks Dep. 142-43, Doc. # 20-2, p. 36).

Meeks then filed this lawsuit and alleged that Xtreme had violated two separate provisions in the ADTPA (Doc. # 1). Specifically, Meeks contends that Xtreme "advertised goods and services with the intent not to sell them as advertised" and, "after receipt of payment for goods, fail[ed] to ship the goods within the time specified," in violation of sections 8-19-5(9) and 8-19-5(17) of the Alabama Code, respectively. *Id.* at ¶¶ 19, 20.

Xtreme contends that it is entitled to judgment as a matter of law because Meeks lacks the evidence necessary to allow for an inference that Xtreme violated either provision (Doc. # 20). Moreover, and more importantly, Xtreme contends that the ADTPA does not apply because Meeks is not a consumer as that term is defined in the Act and is thus not entitled to its protection.

The latter argument presents a threshold issue for the court to decide. Because the

4

court agrees that the evidence does not permit an inference that Meeks was a consumer under the ADTPA when purchasing the kit, summary judgment is due to be granted, and it is not necessary for the court to address the remaining issues.

### III.   ANALYSIS

In relevant part, the ADTPA holds liable "[a]ny person who commits one or more of the acts or practices declared unlawful under this chapter and thereby causes monetary damage to a consumer . . . ." Ala. Code § 8-19-10. Consumers, which the act defines as "any natural person who buys goods or services for personal, family or household use," Ala. Code § 8-19-3(2), enjoys a private right of action for the claims Meeks has alleged, but other persons (i.e., persons, natural or otherwise, not falling within the Act's definition of "consumer") do not.[4]  *See*, *e.g.*, **EBSCO Inds., Inc. v. LMN Enterprises, Inc.**, 89 F. Supp. 2d 1248, 1266 (N.D. Ala. 2000).[5]

Xtreme first contends that Meeks is not a consumer because, as Meeks admitted at his deposition, he purchased the kit "through" his automobile dealership, Rapid Customs, Inc. (Def's Ex. A, Meeks Dep. 37-38, Doc. # 20-2, p. 10; Doc. # 20-1, pp. 9-11).  Although Meeks does not deny stating that he purchased the kit "through" his company, he contends

---

[4] A "person," which the Act defines to include "natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations and any other legal entity," § 8-19-3, may bring a civil action for specified violations of the act that are not relevant to this case. § 8-19-10; *see also* §§ 8-19-5(19) and (20).

[5] State law interpreting the relevant provisions of the ADTPA is scant.

that this is not dispositive because (1) his company is a "consumer" under the ADTPA; (2) he paid for the kit with his own money; and (3) the evidence demonstrates that in purchasing the kit, he was acting in his personal capacity on his own behalf (Doc. # 21-1, pp. 11-19).

Meeks's first argument is without merit and warrants no further discussion. Moreover, because the court agrees with his third argument, it is not necessary for the court to determine how the use of his own money factors into the determination of whether he was a consumer under the ADTPA.

While Meeks did describe his purchase as having taken place through the company, Meeks's meaning is not entirely clear.[6]  Moreover the evidence indicates that all of the

---

[6] With reference to all of Meeks's motorcycle purchases preceding his deposition, the relevant exchange at the deposition took place as follows:

> Q. Did you buy the bike from Scooter Shooterz [sic] through Rapid Customs, Inc.?
> A. No.
> Q. Was that because it was before you got your dealer's license?
> A. Yes, ma'am.
> Q. It was in 2003; correct?
> A. Yes.
> Q. And you got your dealer's license at the beginning of 2004?
> A. Correct.
> Q. Did you buy the bike from Aaron Webster through Rapid Customs, Inc.?
> A. Yes.
> Q. Did you buy the bike from Mr. Orrell through Rapid Customs, Inc.?
> A. Yes.
> Q. Did you buy the bike from Xtreme Cycle Supply through Rapid Customs, Inc.?
> A. Yes.  The money that was wired was mine personally, though.
> Q. Is that how you handled all of the transactions for motorcycles with Rapid Customs, Inc.?
> A. Yeah, pretty much the dealer's license is just a hobby, something to get away from the criminals.

documentation related to this transaction was in Meeks's own name, not his company's, and his affidavit raises further doubt regarding the identity of the actual purchaser (Docs. ## 21-3, 21-4, 21-7, 21-17).  *See* **Chrysler Corp. v. Schiffer**, 736 So. 2d 538 (Ala. 1999) (finding that the plaintiff (Schiffer) had standing to sue under the ADTPA even though the vehicle at issue was owned by his company when there was evidence that the plaintiff purchased the vehicle in his individual capacity and was the only person to actually use the vehicle, and he did so for personal *and* business reasons).

Regardless, Meeks fails to point to evidence sufficient to overcome Xtreme's second argument, which is that Meeks purchased the motorcycle kit for reasons other than personal use (Doc. # 20-1, pp. 9-11).  In addition to the deposition excerpt quoted *supra*, which suggests that Meeks was motivated by business reasons, as well as other statements Meeks made at his deposition that permit no other inference, the following brief exchanges between Meeks and Xtreme's attorney leave no room for doubt that he was engaged in a business pursuit when purchasing the kit from Xtreme:

> Q. Mr. Meeks, what did you plan to do with this bike?
> A. Build it to sell.
> \*\*\*
> Q. Did you plan to use this bike for your personal use at all?
> A. No.

---

> Q. I can understand that.  So the money that was wired to Xtreme Cycle Supply was your personal funds, but you were buying the bike for Rapid Customs, Inc.; is that correct?
> A. Right.

(Def's Ex. A, Meeks Dep. 60, 63, Doc. # 20-2, pp. 15-16).

Meeks was at least aware of "two to three" potential purchasers at the time he ordered the motorcycle, and he anticipated a profit of $5,000.[7] He also stated as his reason for the inflexible time limitation his desire to build and sell the motorcycle before the next "riding season" (Def's Ex. A, Meeks Dep. 61-63, Doc. # 20-2, p. 16). Time was of the essence also because, according to an affidavit submitted on Meeks's behalf, "he was borrowing the money for the bike and he wanted it built as soon as possible" (Estes Aff., Doc. # 21-18).

Meeks attempts to create a factual dispute by submitting affidavits indicating that he is a motorcycle enthusiast and that he always drove all of the motorcycles he purchased before re-selling them. Although the court does not question Meeks's affinity for motorcycles, the latter contention is directly contradicted by statements he made at his deposition.[8] Moreover, neither point sufficiently addresses Meeks's intent at the time he was

---

[7]Meeks stated this figure at his deposition (Def's Ex. A, Meeks Dep. 61-63, Doc. # 20-2, p. 16). He also listed this figure as "lost profit" in response to an interrogatory asking Meeks to specify his damages (Doc. # 20-10, p. 2). Finally, and perhaps most importantly, in response to this court's order requiring Meeks to submit a statement of "objective" damages (Doc. # 14), Meeks stated, *inter alia*:

> Plaintiff claims lost profit in the amount of five thousand dollars ($5,000.00) for the sale *which was negotiated prior to the Plaintiff's purchase of the motorcycle*. This damage is permanent as the ready, willing and able buyer is no longer interested in purchasing. It may increase with fair market value fluctuation.

(Doc. # 18, ¶ 2) (emphasis added).

[8]In discussing a purchase Meeks made from a company called Scooter Shooterz a year before he ordered the kit from Xtreme, Meeks specifically stated that he finished building the motorcycle and sold it and did not buy it for his personal use (Def's Ex. A, Meeks Dep. 21, Doc. # 20-2, p. 6).
It also should be noted that while the court did not take into account Meeks's credibility in drafting this opinion, much of the testimonial evidence submitted in opposition to Xtreme's motion conflicts with

purchasing the motorcycle kit at issue.

Meeks also contends that he could not have purchased the motorcycle for business purposes because his dealer license would not have authorized him to do so. Assuming the accuracy of his legal conclusions, whether Meeks's purchase and sale of the motorcycle would be legally permissible simply is not probative of his purpose for ordering the kit.

Meeks does not attempt to explain his very clear responses to Xtreme's attorney's unambiguous questions, and, admirably, he does not contradict himself directly on this point by stating now that he then purchased the motorcycle primarily for his own use and enjoyment.[9] Instead, in an apparent attempt at damage control, Meeks states, "I do not know whether I would have sold it or used it personally and then sold it" and speculates that, if he had ever built the motorcycle, which he did not, "I believe I would have ridden" it (Doc. # 21-17, ¶ 8).

Meeks's equivocal speculation simply is insufficient to raise a question of fact regarding his purpose for purchasing the motorcycle kit. In the face of a lack of evidence regarding an intent to personally use the motorcyle and no evidence regarding actual use, the cases on which Meeks relies are factually inapposite. **Rommell v. Auto. Racing Club, Inc.**, 964 F.2d 1090, 1101 (11th Cir. 1992) (addressing the definition of consumer goods in the

---

Meeks's deposition and, as already noted, statements Meeks made directly to this court. These statements primarily concern Meeks's use of his business and his past behavior with respect to motorcycles and, therefore, are only marginally, if at all, relevant to the issue with which the court is concerned primarily.

[9]Notably, he was not planning to build the motorcycle himself (Def's Ex. A, Meeks Dep. 57, Doc. # 20-2, p. 15).

context of a personal injury lawsuit);  ***Zeagler v. Custom Auto, Inc.***, 880 F.2d 1284, 1286 (11th Cir. 1989) (finding that a jury question existed as to whether the plaintiff was a consumer under the ADTPA when "there was substantial evidence to support a finding that the plaintiffs intended to make personal use of the car when they bought it and that they subsequently did so").

The only inference the evidence will allow is that Meeks did not purchase the motorcycle kit for "personal, family or household use," and, consequently, he has no private right of action under the ADTPA. The defendants are therefore entitled to judgment as a matter of law, and summary judgment is due to be granted.

## IV.   CONCLUSION

Therefore, it is hereby

ORDERED that the defendants' motion for summary judgment (Doc. # 20) is GRANTED.

DONE this 27th day of March, 2006.

/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE